1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8

9  CRYSTAL SHERMAN O/B/O CES, a minor      )
   child,                                 )      No. CV-10-0343-JPH
10                                          )
            Plaintiff,                      )
11                                          )      ORDER GRANTING PLAINTIFF'S
   v.                                       )      MOTION FOR SUMMARY
12                                          )      JUDGMENT AND DIRECTING AN
   MICHAEL J. ASTRUE,                       )      IMMEDIATE AWARD OF BENEFITS
13 Commissioner of Social Security,         )
                                            )
14          Defendant.                      )
                                            )
15 _____ )

16        BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 17, 24.) Attorney

17  Robyn L. Pugsley represents plaintiff; Special Assistant United States Attorney Brett E. Eckelberg

18  represents defendant.  The parties have consented to proceed before a magistrate judge.  (ECF No. 11.)

19  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's

20  Motion for Summary Judgment, **DENIES** defendant's Motion for Summary Judgment, and directs and

21  immediate award of benefits.

22                              **JURISDICTION**

23        Robbie L. Edwards protectively filed for supplemental security income (SSI) and disability

24  insurance benefits (DIB) on December 9, 2005.  (Tr. 88, 91, 127, 878.)  Plaintiff alleged an onset date

25  of September 1, 2004. (Tr. 88, 878.)  Benefits were denied initially and on reconsideration.  (Tr. 45, 49,

26  870.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ

27  Richard A. Say on November 7, 2007.  (Tr. 960-97.)  Plaintiff was represented by counsel and testified

28  at the hearing.  (Tr. 961-89.)  Vocational expert Debra LaPoint also testified.  (Tr. 989-97.)   The ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -1

denied benefits (Tr. 17-28) and the Appeals Council denied review. (Tr. 4.) Mr. Edwards died on June 9, 2011 and Crystal Sherman was substituted as a party on behalf of Mr. Edwards' minor child.[1] (ECF No. 29-2.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Mr. Edwards was 45 years old at the time of the hearing. (Tr. 961.) He did not graduate from high school but obtained a GED. (Tr. 961.) He testified he became disabled in September 2004 because of back pain due to a previous injury sustained while working as a boat detailer and rigger. (Tr. 962, 979-80.) He also has work experience a laborer, crane operator, tile layer, warehouseman, material layer, maintenance worker, office manager of a hotel, convenience store cashier and parts counter person. (Tr. 984, 986-88.) His last job was a part-time job with Habitat for Humanity as a general light duty laborer. (Tr. 963.) He testified he was prevented from working by chronic lower back pain and pain down the left leg into his toes. (Tr. 964.) Over time, flare-ups of plaintiff's back pain became more and more consistent and the pain increased. (Tr. 981-82.) Changing positions, heat, a TENS unit and medication helped with pain. (Tr. 984.) Plaintiff also had a heart condition but testified he could probably work with just the heart condition. (Tr. 964.)

Mr. Edwards died on June 9, 2011, due to coronary artery disease and chronic obstructive pulmonary disease. (ECF No. 29-2.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are

---

[1]The term "plaintiff" in this decision references either Mr. Edwards or Ms. Sherman depending upon the context.

supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as -adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -3

and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -4

1    gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant

2    can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

3                                                    **ALJ'S FINDINGS**

4            At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in

5    substantial gainful activity since September 10, 2004, the alleged onset date. (Tr. 19.)  At step two, the

6    ALJ found plaintiff has the following severe impairments: disorders of the back including degenerative

7    disc disease and osteoarthritis of the lumbar spine.  (Tr. 19-20.)  At step three, the ALJ found that

8    plaintiff does not have an impairment or combination of impairments that meets or medically equals one

9    of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 20-21.)  The ALJ then determined:

10                   [T]he claimant retains the residual functional capacity to perform the
                     exertional demands of light work, diminished by non-exertional
11                   limitations that narrow the range of work he can perform.  Specifically,
                     while the claimant is capable of lifting and carrying twenty pounds
12                   occasionally and ten pounds frequently, he is limited to standing/walking
                     for a total of two hours in an eight-hour day.  Postural positions including
13                   climbing stairs/ramps, stooping, kneeling, crouching, crawling, and
                     kneeling are limited to occasional. Mr. Edwards would require the option
14                   to change positions from time to time.  He must never climb ropes,
                     ladders, or scaffolds.  He would need to avoid vibration, and working with
15                   hazards such as dangerous heights or dangerous moving machinery.  He
                     takes medication for mild to moderate chronic pain, but is able to remain
16                   attentive, responsive and reasonably alert to perform required job
                     functions.
17
      (Tr. 21.)  At step four, the ALJ found plaintiff is not capable of performing past relevant work.  (Tr. 26.)
18
      After considering plaintiff's age, education, work experience, residual functional capacity and the
19
      testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the
20
      national economy the plaintiff could perform.  (Tr. 27.)  Thus, the ALJ concluded plaintiff has not been
21
      under a disability, as defined in the Social Security Act, from September 10, 2004 through the date of the
22
      decision.  (Tr. 28.)
23
                                                        **ISSUES**
24
              The question is whether the ALJ's decision is supported by substantial evidence and free of legal
25
      error.  Specifically, plaintiff asserts the ALJ: (1) failed to give proper weight to the opinion of plaintiff's
26
      attending physician;  (2) failed to consider evidence of a severe impairment and its residual effects on
27
      plaintiff's ability to work; (3) improperly determined plaintiff was not credible; and (4) improperly
28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -5

determined plaintiff's RFC and concluded plaintiff is capable of unskilled sedentary work. (ECF No. 18 at 14-30.) Defendant asserts the ALJ: (1) properly evaluated the medical evidence; (2) properly found plaintiff did not meet a listing at step three; (3) made a credibility finding supported by substantial evidence and free of legal error; and (4) properly determined plaintiff's RFC and formulated a valid hypothetical. (ECF No. 25 at 3-20.)

**DISCUSSION**

**1.      Credibility**

        Plaintiff argues the record does not support the ALJ's credibility finding. (ECF No. 18 at 20-26.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

        Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)  If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

        If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -6

must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ stated plaintiff's statements concerning his impairments and their impact on his ability to work are generally not credible "in light of the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in documentary reports, and the reports of the treating and examining practitioners." (Tr. 22.)  The first evidence cited in support of this statement is that plaintiff is able to maintain a home for himself and his 6-year-old daughter, yet "claims" she helps with housework and shopping.[2]  (Tr. 22.)  Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, a claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair*, 885 F.2d at 603.   Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication.  *Id.* It is well-established that  a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  If plaintiff seeks help with household tasks from his small child, his claim is supported, not undermined.  He testified he took  frequent breaks when doing chores, for example, washing dishes in two or three 10-minute segments rather than in one 15 minute session.  (Tr. 972.)  This is the type of accommodation a person claiming severe back pain would be expected to need.[3]  His testimony regarding daily activities supports his claim, it does not

---

[2]There is no basis in the record to question plaintiff's statement that his daughter helps him with the grocery shopping and small tasks around the house.  (Tr. 973-75.)

[3]Defendant cites *Thomas*, 278 F.3d at 958-59, for the proposition that the ability to  perform household chores such as cooking, laundry, washing dishes, and shopping is a clear and convincing reason to discount testimony. (ECF No. 25 at 17.)  Defendant overstates the findings in *Thomas*.  In that case, the ALJ cited a laundry list of factors undermining the plaintiff's credibility which are not present here.  *Id.* at 959.  The Ninth Circuit " has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  The ability to assist with some household chores is not determinative of disability.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -7

undermine it.  The ALJ pointed to no evidence suggesting plaintiff is doing more than he claims or engaging in activities inconsistent with his allegations.

Next, the ALJ cited plaintiff's testimony that surgery was offered if he stopped smoking, but he continued to smoke despite his severe pain.  (Tr. 22.)  This is well-documented in the record.  (E.g., Tr. 800, 945.)  However, the ALJ did not acknowledge that plaintiff cut his smoking from thirty cigarettes per day to eight to ten cigarettes per day.  (Tr. 800, 802, 806.)  He participated in group smoking cessation sessions despite his reluctance to do so.  (Tr. 800, 802, 806, 808, 836, 943.)  He used patches and medication to try to stop smoking.  (Tr. 943.)  The record reflects that although plaintiff was not entirely successful, he made significant effort to quit smoking.  This is consistent with a desire to stop smoking in order to have surgery.  The "smoking evidence" does not constitute a clear and convincing reason to justify the negative credibility finding.[4]

The ALJ also pointed out Dr. Shuster noted positive Waddell's signs, "an indication that the claimant was exaggerating his symptoms."  (Tr. 22.)  Dr. Shuster noted, "Waddell signs are positive for vocalization and a little bit of pain with light touch, but otherwise has a straightforward physical examination with what appears to be facetogenic back discomfort."  (Tr. 794.)  Dr. Shuster did not opine that plaintiff was exaggerating his symptoms.  He described plaintiff's condition as, "A complicated problem with some psychological overlay."  (Tr. 794.)  Dr. Shuster also stated "he might be the very rare

---

*Cooper*, 815 F.2d at 56.  Similarly, activities like household chores are not necessarily inconsistent with a finding of disability. *Vick v. Comm'r. of Soc. Sec.*, 57 F.Supp.2d 1077, 1085 (D.Or.1999), aff'd 5 Fed.Appx. 781 (9th Cir.2001).  "If a claimant's activity is in harmony with her disability, the activity does not necessarily indicate an ability to work." *Id.* at 1086.  Plaintiff's description of performance of household chores can only be construed as in harmony with his alleged limitations.

[4]In *Shramek v. Apfel*, the court noted:
> Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health. One does not need to look far to see persons with emphysema or lung cancer - directly caused by smoking - who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts their ability to stop.

226 F.3d 809, 813 (7th Cir. 2000).  The *Shramek* court concluded it was error to rely on failure to quit smoking as evidence of noncompliance with medical treatment and as a basis for a negative credibility finding. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -8

person for a fusion for back pain." (Tr. 795.)  The ALJ's conclusion that plaintiff is exaggerating his symptoms is not supported by Dr. Shuster's own opinion, nor is it supported by the opinion of any other physician in the record.  Furthermore, as plaintiff points out, the ALJ's determination that plaintiff exaggerated his symptoms based on Waddell signs  is an improper use of the Waddell signs.[5]  (ECF No. 18 at 24-25.)

In summarizing the credibility finding, the ALJ further asserted: "Neither objective medical evidence nor the testimony of the claimant establishes psychological or physiological abnormalities that would [sic] all types of work activity." (Tr. 26.)  This statement is not correct.  The vocational expert testified that a person with the limitations based on plaintiff's testimony would not be able to perform any occupation at any exertion or skill level.  (Tr. 993-94.)  Thus, contrary to the ALJ's assertion, the testimony of the claimant establishes physiological abnormalities that would preclude all types of work activity.

Additional error is found in another statement in the ALJ's credibility finding: "So, while the claimant has impairments that are reasonably expected to produce the type of pain he alleges, his complaints suggest a greater severity of symptoms than can be shown by the objective medical evidence alone." (Tr. 26.)  It is well-established that "the ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings." *Fair*, 885 F.2d at 602.  Based on the foregoing, the ALJ failed to cite any clear and convincing reasons justifying the negative credibility determination.  The ALJ's credibility finding is legally insufficient and unsupported by substantial evidence.  As a result, the ALJ erred.

---

[5]Defendant points to *Osenbrook v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001), in asserting that Waddell signs are properly considered in evaluating subjective complaints.  (ECF No. 25 at 9.)  The *Osenbrook* court noted evidence of Waddell's signs suggested a functional component to the plaintiff's pain, but did not rely on Waddell's signs as the basis for a negative credibility finding.  The *Osenbrook* court pointed out another evaluator found significant subjective components to the plaintiff's pain and inconsistent physical findings suggesting that plaintiff was highly unreliable.  *Id.*  In addition, the court pointed out six other significant factors negatively affecting that plaintiff's credibility which are not present in the  case at hand, including the fact that the *Osenbrook* plaintiff's treating physician released him to light work.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -9

### 3.    Dr. Stanek

Plaintiff argues the ALJ failed to give proper weight to the opinion of Dr. Stanek, a treating physician. (ECF No. 18 at 14-18.) Plaintiff saw Dr. Stanek relatively regularly between June 2005 and May 2008 for ongoing evaluation of back pain and pain management. (Tr. 377-415, 725-46, 797-810, 867-68, 933-44.) Dr. Stanek completed four WorkFirst medical assessment forms dated July 25, 2005, August 26, 2005, November 8, 2005 and January 1, 2007. (Tr. 731, 732, 737, 799.) In July 2005, Dr. Stanek opined that plaintiff was capable of sedentary work, noting he was not able to tolerate sitting, standing or ambulating longer than 15-30 minutes at a time due to increased pain. (Tr. 731.) Dr. Stanek directed no work activities even with accommodation until plaintiff's medical condition stabilized. (Tr. 731.) In August 2005, Dr. Stanek again indicated plaintiff's work level was sedentary with limitations in lifting, bending and stooping and requiring frequent changes in positioning. (Tr. 732.) By November 2005, Dr. Stanek reported plaintiff had chronic back pain, uncontrolled hypertension and fluid retention. (Tr. 737.) She opined further medical work-up was required before plaintiff could return to work. (Tr. 737.) In January 2007, Dr. Stanek reported diagnoses of spinal stenosis and chronic low back pain and concluded plaintiff should not participate in work activities until further notice, probably not until after back surgery.[6] (Tr. 799.)

In October 2007, Dr. Stanek completed a Medical Source Statement of Ability to Do Work-Related Activities form. (Tr. 862-65.) Dr. Stanek opined plaintiff was restricted from all work activity from August 26, 2005 until after back surgery. She indicated that from September 10, 2004 to August 26, 2005, plaintiff was limited to 10 pounds for occasional lift and carry; less than 10 pounds for frequent lift and carry; standing or walking for less than 2 hours in an 8-hour workday with 15-30 minute tolerance and the ability to alternate to sit and stand at will. (Tr. 862.) Manipulative limitations in reaching were limited to occasionally. (Tr. 863.) Sitting was limited to periodically alternating sitting and standing to relieve pain or discomfort, with notes that plaintiff must be able to alternate stand/walk at will. (Tr. 864.)

---

[6]It is noted that of the four WorkFirst medical assessment forms, the ALJ mentioned only the August 3, 2005 opinion and did not analyze or assign weight to the opinion. (Tr. 24.) The ALJ also failed to mention or assign weight to Dr. Stanek's opinions from July and November 2005 and January 2007.

It was further noted that plaintiff was limited in upper extremities to reaching above the head but no pushing or pulling, and limited in the lower extremities to periodically operating foot controls. (Tr. 864.) Dr. Stanek listed the supporting objective and observational evidence. (Tr. 864.)  Dr. Stanek also opined plaintiff was never to engage in postural activities. (Tr. 864.) Finally, Dr. Stranek wrote a short narrative stating plaintiff could not maintain the pace and persistence to perform competitive work week due to chronic low back and leg pain, narcotic medication for pain control, uncontrolled hypertension and diastolyic heart dysfunction from September 10, 2004.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The ALJ summarized the Medical Source Statement completed by Dr. Stanek. (Tr. 25.)  The ALJ did not specifically assign weight to Dr. Stanek's report but the ALJ's discussion of Dr. Stanek's opinion leads the court to infer the opinion was rejected by the ALJ. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).   The ALJ essentially gave two reasons for rejecting Dr. Stanek's opinion.

First, the ALJ noted Dr. Stanek is not plaintiff's primary care physician. (Tr. 25.) The regulations give no greater weight to the opinion of a primary care physician than to any other treating physician. *See* 20 C.F.R. § 1527.  Rather, some factors to be considered in weighing the medical opinion evidence are the length and frequency of the treatment relationship, the nature of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the speciality

of the physician. 20 C.F.R. § 1527(d). While the ALJ is correct that Dr. Stanek is not plaintiff's primary care provider, plaintiff saw Dr. Stanek more frequently and regularly for his back complaints than any other physician in the record. This tends to lend more weight to Dr. Stanek's opinion, not less weight.

The ALJ also pointed out Dr. Stanek is not a board certified orthopedic surgeon or neurosurgeon. (Tr. 25.) Although the speciality of a physician may be a factor in evaluating the evidence, there is no authority in case law or regulations suggesting that non-surgeons are entitled to less weight than surgeons. Dr. Stanek's records reflect that her practice is entitled "Northwest Medical Rehabilitation," suggesting Dr. Stanek specializes in rehabilitative medicine. Furthermore, plaintiff submitted Dr. Stanek's curriculum vitae to the Appeals Council which indicates Dr. Stanek is board certified in physical medicine and rehabilitation.[7] (Tr. 950.) She treats patients with spinal cord injuries, general orthopedic problems, pulmonary problems and has a strong background in cardiac rehabilitation. (Tr. 950.) Dr. Stanek is a specialist in an area relevant to plaintiff's condition. Any implication by the ALJ that Dr. Stanek is unqualified, underqualified or otherwise lacking a credential entitling her opinion to the weight of a treating physician is without basis in the record. The ALJ's suggestion that Dr. Stanek's opinion is entitled to less weight because she is not a surgeon or a primary care physician is without merit or basis in law or fact. This is not a specific, legitimate reason for rejecting Dr. Stanek's opinion.

The ALJ also rejected Dr. Stanek's opinion because her office notes from the same date "demonstrate essentially unremarkable objective functional status and physical findings that would support [her] conclusions." (Tr. 25.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. Similarly, where a treating physician's opinion is itself inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir.1996). However, merely to state that a medical opinion is not supported by enough objective findings "does not achieve the level of specificity our prior cases have required" *Rodriguez v. Bowen*, 876 F.2d 759,762 (9th Cir. 1989) (citing *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). Dr. Stanek's office notes from

---

[7]Evidence submitted to the Appeals Council is properly considered by this court because the Appeals Council considered it in denying Plaintiff's request for review. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)*; Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); (Tr. 4-7).

October 15, 2007 indicated plaintiff had a history of persistent low back pain with radiculopathy due to a low back injury. (Tr. 867.) Dr. Stanek noted plaintiff had a central disk protrusion with migration of a disk fragment and L4-5. He had been evaluated by a back surgeon as an appropriate candidate for surgery if he quit smoking. (Tr. 867.) Plaintiff's history of atrial fibrillation, high blood pressure, diastolyc dysfunction and depression were noted to be independent. (Tr. 867.) His attempts to reduce and quit smoking were noted. (Tr. 867.) Persistent low back pain rated at 5-7/10 was mentioned, with pain primarily in the lower left back radiating down to his foot intermittently laterally in the L5-S1 dermatomes. (Tr. 867.) None of these findings are inconsistent with the findings noted in the Medical Source Statement completed by Dr. Stanek and are not "essentially unremarkable" as characterized by the ALJ.

Additionally, the basis for the Dr. Stanek's findings are not contained solely in the examination of October 15, 2007. Dr. Stanek listed evidence supporting her conclusions on the Medical Source Statement form:

> Severe chronic low back pain with radiculopathy confirmed by the January 7, 2005 and May 12, 2005 lumbar spine MRIs revealing a central disc extrusion with superior migration of an extruded disc of 3 mm extending superiorly approximately 8 mm at L4-5 resulting in mild central canal narrowing and a small central disc protrusion at L3-4. Multiple physical exams have confirmed possible L4 nerve involvement, i.e.: giveaway of the lower extremities due to pain, mild right toe drag secondary to weakness, as well as consistent reduced lumbar range of motion with pain, muscle spasms, and point tenderness at L4-S1 and the sciatic notch. Edwards's severe chronic back and leg pain has not responded to conservative treatment and surgery has not been recommended to date.

(Tr. 864.) Her opinion was based on objective evidence, multiple physical exams, and response to treatment. The ALJ failed to point to identify any specific inconsistencies or evidence of an unsupported opinion. As a result, the implication that Dr. Stanek's opinion is inconsistent with the evidence or unsupported by the record is not supported by the substantial evidence.

Defendant asserts the ALJ "noted conflicts between Dr. Stanek's opinion and those of the physicians about the severity of Plaintiff's lower back, his treatability, and his functionality." (ECF No. 25 at 4.) This is an overstatement of the ALJ's opinion as well as the opinions of other physicians in the record. The ALJ summarized the medical evidence but did not note conflicts,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -13

analyze, or otherwise explain the weight given to any other medical provider.  (Tr. 23-25.)  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Orn v. Astrue*,  495 F.3d 625, 632 (9th Cir. 2007).  The ALJ failed to do so here.

Defendant cites the opinions of Dr. Thorne, Dr. Fletcher and Dr. McCabe which are all MRI reports of physicians who did not examine or treat plaintiff and contain no evidence about the treatability of plaintiff's condition or his functionality.  (Tr. 263, 259, 937; ECF No. 25 at 4, 10-12.)  All three MRI reports were reviewed by Dr. Stanek, helped form the basis of her opinions and were cited by her in support of her opinion.  (Tr. 864, 939.)  As noted previously, the court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be made.  *Magallanes*, 881 F.2d at 755.  The ALJ did not note these records to be inconsistent with Dr. Stanek's opinion or cite any other medical opinion suggesting Dr. Stanek misinterpreted or misconstrued the MRIs.  Dr. Stanek apparently thought the MRIs supported her opinion.  Some deference must be given to the subjective judgment of a doctor's opinion.  *See Embrey*,  849 F.2d at 422.  There is no evidence supporting the argument that there is a conflict between Dr. Stanek's opinion regarding functional limitations and the opinions of the radiologists who read the MRIs.

Defendant also cites the opinion of examining physician, Dr. Shuster, who saw plaintiff one time on May 12, 2006, as conflicting with Dr. Stanek's opinion.  (ECF No. 25 at 4, 8-10.)  Dr. Shuster's May 2006 exam revealed limited range of motion with extension and flexion in the spine and hip and apparent facetogenic back discomfort.  (Tr. 794.)  Dr. Shuster described plaintiff's condition as a "complicated problem with some psychological overlay."  (Tr. 794.)  He opined nonoperative treatments would have a good chance of helping plaintiff.  (Tr. 795.)  He recommended water therapy.  (Tr. 795.)  He also opined plaintiff might someday be a candidate for spinal fusion.  (Tr. 795.)

Even if there is a conflict between Dr. Stanek's opinion and Dr. Shuster's opinion (and the court does not conclude that there is), the ALJ is required to not only set forth a summary of the

evidence, but to make findings and state his interpretation of the evidence.[8]  *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).  The ALJ did not discuss Dr. Shuster's opinion other than to summarize it and did not identify any inconsistencies between Dr. Stanek's opinion and Dr. Shuster's opinion.  In fact, neither the ALJ nor the defendant point out any specific conflict between Dr. Shuster's opinion and Dr. Stanek's opinion.  As a result, even if there is a conflict in the evidence, it does not amount to specific, legitimate reason supported by substantial evidence if the ALJ does not assert it.[9]

Furthermore, the court concludes the opinions are not necessarily in conflict.  Consistent with Dr. Shuster's opinion that conservative measures were appropriate, Dr. Stanek reported in May 2006 that "several modalities have failed in reducing or resolving his pain issues, including extensive physical therapy, epidural steroid injections, and oral medications.  (Tr. 744.)  In her October 2007 opinion, Dr. Stanek opined plaintiff had not responded to conservative treatment.  (Tr. 864.)  Dr. Shuster's 2006 exam notes did not include an assessment of plaintiff's functional limitations, while Dr. Stanek's 2007 opinion is a detailed assessment of functional limitations.  (Tr. 794-95, 862-65.)  Thus, there is no conflict of opinion regarding functional limitations.  Dr. Shuster opined surgery may be appropriate if plaintiff stopped smoking; Dr. Stanek encouraged plaintiff stop smoking and suggested medical and social support to help him become a surgical candidate.   There is no conflict between the opinions regarding the severity of plaintiff's lower back, his treatability, and his functionality as asserted by defendant.

Lastly, defendant points to the April 2006 opinion of Dr. Wolfe, a state agency reviewing

---

[8]Defendant cites *Magallanes*, 881 F.2d at 751, and asserts, "One way an ALJ can give specific, legitimate reasons for rejecting controverted medical opinions is by summarizing the conflicting evidence in detail and interpreting it."  (ECF No. 25 at 8.)  However, *Magallanes* actually quotes *Cotton* which states, "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." 799 F.2d at 1408. In this case, the ALJ set forth a summary of Dr. Shuster's examination but failed to state an interpretation or make findings about that evidence.  A summary of evidence which may or may not conflict with a treating physician opinion does not, without explanation or analysis by the ALJ, count as a specific, legitimate reason for rejecting the opinion.

[9]The court is constrained to review only those reasons asserted by the ALJ.  *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

physician as evidence conflicting with Dr. Stanek's opinion. Even if Dr. Wolfe's opinion conflicts with Dr. Stanek's opinion, the ALJ must provide specific, legitimate reasons for rejecting the opinion of the treating physician over the opinion of a non-treating, non-examining physician. As discussed *supra*, the ALJ failed to do so. As plaintiff points out, Dr. Wolfe's opinion is based on limited information and does not include several years of exam notes and the 2007 functional assessment by Dr. Stanek. (ECF No. 33 at 3-4.)

The ALJ failed to identify any specific, legitimate reason supported by substantial evidence for rejecting the opinion of Dr. Stanek, a treating physician. The ALJ did not identify substantial evidence justifying assigning greater weight to the opinion of a non-examining or examining physician than to the opinion of a treating specialist who regularly saw and treated plaintiff over the course of several years. As a result, the ALJ erred. There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). When Dr. Stanek's opinion is credited as a matter of law, the evidence establishes that plaintiff was, in fact, disabled. The vocational expert testified that a person with the limitations identified by Dr. Stanek would not be able perform work in the national economy. (Tr. 994-96.) Accordingly, remand would only serve to delay payment.

Other issues raised by plaintiff need not be addressed. Any additional errors do not affect the ultimate outcome, which is that once Dr. Stanek's opinion is credited, plaintiff must be determined to be disabled. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (where corrected error does not change the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS -16

outcome, the error is harmless).

**CONCLUSION**

The ALJ did not justify rejection of the opinion of plaintiff's treating physician with specific, legitimate reasons supported by substantial evidence.  When the opinion is credited, the evidence indicates plaintiff is disabled.

Accordingly,

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED**.  The matter is **remanded** for payment of an immediate award of benefits.

2.     Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **DENIED.**

3.     An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.


DATED February 22, 2012


                              S/ JAMES P. HUTTON
                    UNITED STATES MAGISTRATE JUDGE